UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

ANTONIO CORTEZ BECK,

        Plaintiff,

v.

MICHAEL BURGESS et al.,

        Defendants.
_____/

Case No. 1:23-cv-783

Honorable Jane M. Beckering

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

**I.**    **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. The events about

which he complains occurred at that facility. Plaintiff sues ECF Warden Michael Burgess and ECF Correctional Officers Unknown Millicheck and Unknown Parties, identified as Unnamed Correctional Officers. (Compl., ECF No. 1, PageID.1, 2). Plaintiff sues Defendants in their official capacities only. (*Id.*)

In Plaintiff's complaint, he alleges that on February 3, 2023, he attended a "Violent Prevention Program" (VPP) class, "which is a mandatory parole requirement."[1] (*Id.*, PageID.4.) Plaintiff states that the "class is a mesh of both level II prisoners and level IV prisoners." (*Id.*) During the February 3, 2023, VPP class, Plaintiff was assaulted by a level IV prisoner. (*Id.*) Plaintiff states that the "teacher of the class attempted to restrain the prisoner who was assaulting [Plaintiff]," but there were no correctional officers "immediately present at the time of the assault." (*Id.*) During the assault, Plaintiff "was struck several times in the head and face, causing [a] bloody nose, swelling, and serious pain in [his] jaw and chick-bones [sic] [and] also causing [Plaintiff] to have (2) two black eyes and serious headaches for weeks after the event." (*Id.*)

Immediately following the assault, Plaintiff was placed in handcuffs and taken to segregation. (*Id.*) Later that same day, Plaintiff was permitted to return to his housing unit. (*Id.*) Upon Plaintiff's return to his housing unit, he told "unit staff that [he] was experiencing a serious headache[] and that [he] could not breathe through [his] nose." (*Id.*) Defendant Unknown Parties, identified as Unnamed Correctional Officers, told Plaintiff to submit a healthcare kite. (*Id.*) Thereafter, Plaintiff spoke with non-party resident unit manager Pelky. (*Id.*) Pelky called healthcare, and Plaintiff was then sent to healthcare. (*Id.*)

Plaintiff described the assault and his conditions "to health care staff." (*Id.*) A non-party nurse examined Plaintiff, and Plaintiff was then sent to an outside hospital, where he received an

---

[1] The Court corrects the capitalization and punctuation in quotations from Plaintiff's complaint.

2

MRI, which showed that he had a broken nose. (*Id.*) Plaintiff was issued Tylenol and Motrin; however, Plaintiff states that these medications "did not stop [his] severe headaches and facial pain." (*Id.*, PageID.4–5.) Plaintiff alleges that he "still h[as] not received an[y] further treatment for [his] broken nose," and he states that he "still experience[s] headaches, mostly at night, which prevent [him] from sleeping." (*Id.*, PageID.5.)

Plaintiff, a level II prisoner, alleges that at some unspecified time, he "wrote the Warden indicating that he was uncomfortable with level IV prisoner[s] in the class." (*Id.*, PageID.6.) Further, Plaintiff states that he "had no recourse but to attend the mandatory class," explaining that the class "indicates that he is parole eligible [or] will be in a short period of time." (*Id.*, PageID.5, 6.) Plaintiff also states that "a fight has the potential to derail his parole, so he was placed in a position where he couldn't even defend himself against an assault, making him an obvious victim." (*Id.*, PageID.5.)

Based on the foregoing allegations, Plaintiff avers that Defendants Burgess, Millicheck, and Unknown Parties violated his rights under the Eighth Amendment. (*Id.*, PageID.6.) As relief, Plaintiff seeks compensatory, punitive, and nominal damages. (*Id.*)

**II.     Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

    **A.**    **Official Capacity Claims**

Plaintiff sues Defendants Burgess, Millicheck, and Unknown Parties in their official capacities only. (Compl., ECF No. 1, PageID.1, 2.)

A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute.

4

*See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks only monetary damages. (Compl., ECF No. 1, PageID.6.) An official capacity defendant is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Accordingly, Plaintiff's official capacity claims against Defendants Burgess, Millicheck, and Unknown Parties will be dismissed.[2] Because Plaintiff sues Defendants in their official capacities only, for this reason alone, his claims against Defendants will be dismissed.

Even setting aside the capacity issue and addressing the merits of Plaintiff's claims, as explained below, Plaintiff's claims are subject to dismissal for failure to state a claim.

B.     **Eighth Amendment Claims**

Plaintiff alleges that Defendants violated his rights under the Eighth Amendment. (Compl., ECF No. 1, PageID.6.)

---

[2] Even if Plaintiff had sought declaratory or injunctive relief, his official capacity claims would still be subject to dismissal. The Supreme Court has cautioned that, "*Ex parte Young*[, 209 U.S. 123, 159–60 (1908),] can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (citation omitted). Here, Plaintiff seeks relief for a past harm, and he does not allege facts suggesting an ongoing violation of federal law.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837.

1. **Defendant Millicheck**

With respect to Defendant Millicheck, Plaintiff fails to allege facts showing how Defendant Millicheck was personally involved in the violation of his constitutional rights. (*See generally* Compl., ECF No. 1.) When listing the Defendants named in this action, Plaintiff identifies Defendant Millicheck as a "corrections officer (school building)"; however, Plaintiff fails to name Defendant Millicheck in the body of his complaint. (*See id.*, PageID.2, 4–6.) Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in

or responsible for each alleged violation of rights). Plaintiff's claims against Defendant Millicheck, therefore, fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Accordingly, Plaintiff's claims against Defendant Millicheck will be dismissed.

### 2. Defendant Burgess

Plaintiff contends that Defendant Burgess failed to protect Plaintiff from the assault by the level IV prisoner during the VPP class. (*See* Compl., ECF No. 1, PageID.6.)

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Id.* at 834; *Helling*, 509 U.S. at 32; *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street*, 102 F.3d at 814; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

In support of Plaintiff's failure-to-protect claim against Defendant Burgess, he alleges that at some unspecified time, he "wrote the Warden[, Defendant Burgess,] indicating that he was

7

uncomfortable with level IV prisoner[s] in the class." (Compl., ECF No. 1, PageID.6.) Plaintiff states that he did not receive a response to his letter. (*Id.*) Further, Plaintiff contends that he "had no recourse but to attend the mandatory class," explaining that the class "indicates that he is parole eligible [or] will be in a short period of time."[3] (*Id.*, PageID.5, 6.)

Although Plaintiff contends that he wrote a letter to Defendant Burgess "indicating that he was uncomfortable with level IV prisoner[s] in the class" (*id.*, PageID.6), this vague and conclusory assertion is insufficient to show that a substantial risk of harm was present when Plaintiff continued to attend classes with level IV prisoners. Reporting that he was "uncomfortable" suggests that Plaintiff had some unspecified uneasiness; however, even generously construing Plaintiff's statement, being "uncomfortable," at best, could have a mere suggestion of some vague risk. Without additional supporting facts about how Plaintiff was "uncomfortable," Plaintiff has failed to allege sufficient facts to suggest that any risk he faced at that time was substantial, let alone that any Defendants knew about this risk and disregarded it.

---

[3] Plaintiff also states that "a fight has the potential to derail his parole, so he was placed in a position where he couldn't defend himself against an assault, making him an obvious victim." (Compl., ECF No. 1, PageID.5.) Plaintiff appears to provide information about the connection between the VPP classes and parole to provide context and support for his failure-to-protect claim. However, to the extent that Plaintiff intended to bring a claim regarding any alleged interference with his eligibility for parole, as explained herein, he would fail to state such a claim. The United States Court of Appeals for the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. *Sweeton v. Brown*, 27 F.3d 1162, 1164–65 (6th Cir. 1994) (en banc). Further, in *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011), the Sixth Circuit held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole. *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). Additionally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603–04 (Mich. 1999). Under this authority, Plaintiff has no reasonable expectation of liberty until he has served his maximum sentence. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 11 (1979). Thus, any alleged interference with Plaintiff's future parole prospects does not implicate a federal right.

Further, without additional supporting facts, the fact that level II and level IV prisoners attended the same VPP class is insufficient to show a risk of harm, let alone a substantial risk of harm. *Cf. Wilson v. Seiter*, 893 F.2d 861, 865 (6th Cir.1990) ("The absence of allegations of *prior* physical violence involving any inmate supporting appellants' claims leads us to conclude that their fear is not reasonable." (emphasis added)), *vacated on other grounds*, 501 U.S. 294 (1991); *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (discussing that although a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack). Instead, Plaintiff appears to ask the Court to fabricate plausibility to his claims from mere ambiguity. Under these circumstances, Plaintiff has failed to allege sufficient facts to show that Defendant Burgess disregarded a substantial risk of harm to Plaintiff.[4]

Further, it appears that Plaintiff seeks to hold Defendant Burgess liable for the actions of his subordinates, however, government officials, such as Defendant, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson*

---

[4] In Plaintiff's complaint, he states that the "school [correctional officers] were not present at the time of the assault." (Compl., ECF No. 1, PageID.5.) It appears that Defendants Unknown Parties are the correctional officers who were working in Plaintiff's housing unit on February 3, 2023, when Plaintiff returned from segregation (*see id.*, PageID.4); it does not appear that Defendants Unknown Parties are the unnamed school correctional officers that Plaintiff references in his complaint. Regardless, even assuming, without deciding, that Defendants Unknown Parties include the unnamed school correctional officers, Plaintiff has failed to allege any facts to suggest that the school correctional officers knew of any risk of harm, let alone that they disregarded such risk. Specifically, Plaintiff does not allege that he had informed the school correctional officers of his concerns about attending classes with level IV prisoners, and setting this aside, he does not allege that the school correctional officers had any other knowledge of a risk of harm from the mixed custody level classes. Further, as discussed above, without additional supporting facts, the fact that level II and level IV prisoners attended the same class is insufficient to show a substantial risk of harm. Therefore, any intended failure-to-protect claim against Defendants Unknown Parties is subject to dismissal.

*v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any *facts* showing that Defendant Burgess encouraged or condoned the conduct of his subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Plaintiff's conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendant Burgess was personally involved in the alleged violations of Plaintiff's constitutional rights.

Accordingly, for all of the reasons set forth above, Plaintiff's Eighth Amendment claims against Defendant Burgess will be dismissed.

### 3. Defendants Unknown Parties

With respect to Defendants Unknown Parties, Plaintiff alleges that when he returned to his housing unit after being briefly in segregation immediately following the assault by the other prisoner, Plaintiff told "unit staff" that he "was experiencing a serious headache[] and that [he] could not breathe through [his] nose." (Compl., ECF No. 1, PageID.4.) Defendants Unknown Parties told Plaintiff to "fill-out a health care kite." (*Id.*) Plaintiff then spoke with non-party resident unit manager Pelky, who called healthcare, and Plaintiff was then sent to healthcare. (*Id.*) Plaintiff does not present any other allegations against Defendants Unknown Parties.[5]

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).

Here, Plaintiff alleges that Defendants Unknown Parties told Plaintiff to submit a healthcare care kite regarding his medical conditions. (Compl., ECF No. 1, PageID.4.) Shortly thereafter, Plaintiff was sent to healthcare after speaking with non-party resident unit manager Pelky. (*Id.*) Plaintiff apparently faults Defendants Unknown Parties for advising him to submit a healthcare kite, however, Plaintiff alleges no facts explaining why he faults Defendants Unknown Parties for this response. Notably, Plaintiff does not allege that Defendants Unknown Parties prevented Plaintiff from seeking medical care; instead, they told Plaintiff to contact healthcare by submitting a healthcare kite. *Cf. Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018)

---

[5] As discussed above, to the extent that Plaintiff intended to bring a failure-to-protect claim against Defendants Unknown Parties, he fails to state such a claim. *See supra* note 4.

(discussing that a custody officer is entitled to rely on medical provider's judgment). Further, Plaintiff does not allege that he suffered any harm as a result of the time that passed between his interaction with Defendants Unknown Parties and when non-party resident unit manager Pelky sent Plaintiff to healthcare. Under these circumstances, Plaintiff has failed to allege facts to show that Defendants Unknown Parties were deliberately indifferent to Plaintiff's serious medical needs.[6] *See Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). Accordingly, Plaintiff's Eighth Amendment claims against Defendants Unknown Parties will be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should

---

[6] Furthermore, with respect to any intended claims regarding the medical care that Plaintiff received after the assault by the other prisoner, Plaintiff alleges no facts to suggest that any of the named Defendants had any knowledge of, let alone involvement in, Plaintiff's medical treatment. *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

12

Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   August 16, 2023               /s/ Jane M. Beckering
                                       Jane M. Beckering
                                       United States District Judge