UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CHEVON JOHNSON,

        Petitioner,                     Case No. 1:23-cv-467

v.                                         Honorable Jane M. Beckering

STEVEN HINKLEY et al.,

        Respondents.
_____/

## OPINION

This is a habeas corpus action brought by an immigration detainee under 28 U.S.C. § 2241. Petitioner Chevon Johnson is currently incarcerated at the Calhoun County Correctional Center (CCCC) in Battle Creek, Michigan. In his § 2241 petition, Petitioner contends that he will face imminent danger if he is removed from the United States due to a "leak" of personal information by Immigration and Customs Enforcement (ICE). (ECF No. 1, PageID.6.) Petitioner alleges further that this error "would likely put [him] in direct threat of life or limb if returned to his country of origin." (*Id.*) Petitioner further contends that he should be released because CCCC does not meet his dietary needs and "subjects him to a diet that is harsh on his dietary tract." (*Id.*)

The Court directed Respondents to answer the petition in an order (ECF No. 3) entered on May 10, 2023. Respondents filed a motion to dismiss (ECF No. 5) and memorandum in support thereof (ECF No. 6) on July 7, 2023. Respondents contend that this Court lacks jurisdiction over Petitioner's challenges to his removal proceedings and that his claim regarding his conditions of confinement cannot support habeas corpus relief. (*Id.*, PageID.21.) Petitioner has not filed a

response to Respondents' motion. For the following reasons, the Court will grant Respondents' motion to dismiss (ECF No. 5) and dismiss Petitioner's petition (ECF No. 1).

### Discussion

**I.  Background**

Petitioner was admitted to the United States as a lawful permanent resident on October 7, 2006. (Mitchell Decl. ¶ 4, ECF No. 6-1, PageID.31.) However, on February 7, 2011, Petitioner was convicted in the Kings County, New York Supreme Court of attempted criminal possession of a weapon in the second degree and sentenced to two years' imprisonment. (*Id.* ¶ 5.) A week later, Petitioner was convicted in the Queens County, New York Supreme Court of first-degree robbery and sentenced to five years' imprisonment. (*Id.* ¶ 6.) The Department of Homeland Security (DHS) commenced removal proceedings against Petitioner, and he was ultimately removed to Jamaica in 2014 pursuant to an immigration judge's removal order. (*Id.* ¶¶ 7–9.)

On July 4, 2017, Petitioner re-entered the United States without inspection via water near Miami, Florida. (*Id.* ¶ 10.) ICE officers encountered him on or about April 25, 2018, while Petitioner was detained at the Metropolitan Detention Center (MDC) in Brooklyn. (*Id.*) Petitioner was in custody after having been indicted for a violation of 8 U.S.C. §§ 1326(a) and (b)(2), namely, having entered the United States unlawfully after being removed following a conviction for an aggravated felony. (*Id.* ¶ 11.) On April 26, 2018, ICE agents placed an immigration detainer on Petitioner. (*Id.* ¶ 12.) On June 26, 2018, the detainer was lifted when Petitioner received a $200,000.00 collateral bond from the United States District Court for the Eastern District of New York. (*Id.* ¶ 13.) On July 5, 2018, Petitioner was placed on an Order of Supervision. (*Id.* ¶ 14.)

On December 11, 2020, Petitioner was convicted of illegal re-entry following deportation, in violation of 8 U.S.C. §§ 1326(a) and (b)(2), and the Eastern District of New York sentenced him to two years' imprisonment. (*Id.* ¶ 15.) Petitioner surrendered to the Bureau of Prisons (BOP)

to begin serving that sentence on February 1, 2021. (*Id.* ¶ 16.) On February 22, 2021, ICE agents placed an immigration detainer on Petitioner. (*Id.* ¶ 17.)

On July 8, 2022, while Petitioner was incarcerated at the now-closed North Lake Correctional Facility in Baldwin, Michigan, ICE agents served Petitioner with a Notice of Intent/Decision to Reinstate Prior Order, indicating that Petitioner's prior order of removal was being reinstated against him. (*Id.* ¶ 18.) On August 12, 2022, Petitioner was released from BOP custody and was taken into custody by ICE. (*Id.* ¶ 19.) Petitioner claimed that he would be persecuted by the Jamaican government if removed there, and so ICE referred him to an asylum officer for a "reasonable fear" interview. (*Id.*) After that interview, the asylum officer determined that Petitioner had not established a reasonable fear of returning to Jamaica, and Petitioner requested that an immigration judge review that decision. (*Id.* ¶ 20.) On September 16, 2022, an immigration judge vacated the asylum officer's decision and placed Petitioner in withholding-only proceedings, which would permit Petitioner "to apply for withholding of removal under the [Immigration and Nationality Act (INA)] as well as deferral of removal under the regulations implementing the Convention Against Torture [(CAT)]." (*Id.* ¶ 21.)

On December 7, 2022, ICE agents served Petitioner with a Data Exposure Form, which informed Petitioner "of an unintentional disclosure that occurred on [ICE's] public-facing website on November 28, 2022." (*Id.* ¶ 22.) On January 24, 2023, officers served Petitioner with a copy of "Frequently Asked Questions (FAQs) on U.S. Immigration and Customs Enforcement's Unintentional Disclosure of Personally Identifiable Information." (*Id.* ¶ 23.)

On February 28, 2023, DHS moved to dismiss Petitioner's withholding-only proceedings, and an immigration judge granted that motion on March 1, 2023. (*Id.* ¶¶ 24–25.) On March 3, 2023, DHS then charged Petitioner with removal under several sections of the INA. (*Id.* ¶ 26.)

3

Petitioner, represented by counsel, conceded the charges of removal, and admitted to the factual allegations set forth in the notice to appear. (*Id.* ¶¶ 27–28.) On March 10, 2023, an immigration judge sustained all charges of removability and designated Jamaica as the country of removal. (*Id.* ¶ 28.) That same day, Petitioner appeared before an immigration judge for a bond hearing. (*Id.* ¶ 29.) The immigration judge denied bond, concluding that Petitioner's detention was necessary pursuant to 8 U.S.C. § 1226(c)(1)(A). (*Id.*)

Petitioner filed his § 2241 petition on May 5, 2023. On May 17, 2023, Petitioner and his attorney appeared before an immigration judge for a hearing on Petitioner's application for relief from removal. (*Id.* ¶ 32.) Petitioner sought only deferral of removal under the CAT. (*Id.*) Petitioner "conceded that he was not eligible for any other forms of relief as he was convicted of a particularly serious crime." (*Id.*)

On June 2, 2023, the immigration judge issued a written decision ordering that Petitioner be removed to Jamaica and denying his application for deferral of removal under the CAT. (*Id.* ¶ 33.) Petitioner appealed that decision to the Board of Immigration Appeals (BIA) on June 20, 2023. (*Id.* ¶ 35.) A review of the Executive Office for Immigration Review (EOIR)'s website indicates that Petitioner's appeal is still pending before the BIA. *See* https://acis.eoir.justice.gov/en/ (enter "058761516" for the A-Number, then select "Submit") (last visited Aug. 9, 2023).

In his § 2241 petition, Petitioner contends that the data breach has caused him to "likely [face] imminent danger upon removal" to Jamaica. (ECF No. 1, PageID.6.) He suggests that the breach "creates unremediable [sic] circumstances for removal proceedings." (*Id.*) Petitioner alleges that because there is no remedy that can alleviate these circumstances, his removal order should not be upheld, and, as a consequence, he should be released. (*Id.*) Petitioner also contends

4

that he should be released because the CCCC does not meet his dietary needs and "subjects him to a diet that is harsh on his dietary tract." (*Id.*) According to Petitioner, CCCC refuses to provide him a diet that consists only of fruits and vegetables. (*Id.*)

II.     **Discussion**

    A.     **Claims Related to the Data Breach**

As noted above, Petitioner contends that the data breach has caused him to "likely [face] imminent danger upon removal" to Jamaica. (ECF No. 1, PageID.6.) Petitioner suggests that because there is no remedy that can alleviate these circumstances, his removal order should not be upheld, and, as a consequence, he should be released. (*Id.*) This Court, however, lacks jurisdiction over such claims, as "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal." *See* 8 U.S.C. § 1252(a)(5); *see also Elgharib v. Napolitano*, 600 F.3d 597, 606 (6th Cir. 2010); *Armendariz v. United States*, No. 23-3078-JWL, 2023 WL 2648282, at *1 (D. Kan. Mar. 27, 2023) (concluding that the district court lacked jurisdiction to consider the petitioner's request for release from pre-removal immigration detention and "effect the approval of his asylum application" based upon the inadvertent disclosure of information concerning the petitioner's application for relief). Petitioner's challenges to his removal proceedings premised upon the data breach will, therefore, be dismissed for lack of jurisdiction.

    B.     **Conditions of Confinement at CCCC**

Petitioner contends that he should be released because the CCCC does not meet his dietary needs and "subjects him to a diet that is harsh on his dietary tract." (ECF No. 1, PageID.6.) According to Petitioner, CCCC refuses to provide him a diet that consists only of fruits and vegetables. (*Id.*) A habeas corpus petition is generally not available for challenges to conditions of confinement; rather, such claims must be filed by way of a civil rights complaint. *See Preiser v.*

5

*Rodriguez*, 411 U.S. 475, 486–87 (1973). The Sixth Circuit has recognized that a § 2241 petition may be used to challenge "alleged unconstitutional conditions of . . . confinement [which] can be remedied only by release." *Wilson v. Williams*, 961 F.3d 829, 837 (6th Cir. 2020). *Wilson*, however, concerned claims by medically vulnerable inmates at the Elkton Federal Correctional Institution that only release from incarceration could protect them from contracting COVID-19. *See id.* at 840.

Here, Petitioner has not demonstrated that his claim concerning his diet could not be remedied by improved conditions at the CCCC; accordingly, this claim is not cognizable in a § 2241 petition and must be asserted via a civil rights complaint. *See Luedtke v. Berkebile*, 704 F.3d 465, 466 (6th Cir. 2013) (citing *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). The Court, therefore, will dismiss Petitioner's claim concerning his diet without prejudice to Petitioner's right to assert his claim in a civil rights action.

## Conclusion

For the reasons discussed above, the Court will enter an order and judgment granting Respondents' motion to dismiss (ECF No. 5) and dismissing Petitioner's § 2241 petition.[1]

Dated:     August 16, 2023                    /s/ Jane M. Beckering
                                              Jane M. Beckering
                                              United States District Judge

---

[1] In § 2241 cases involving immigration detainees, the Court need not address whether to grant a certificate of appealability. *See Ojo v. I.N.S.*, 106 F.3d 680, 681 (5th Cir. 1997).